# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

DANIELLE MARIE YOUNG,
      Plaintiff,

    vs.

COMMISSIONER OF
SOCIAL SECURITY,
      Defendant.

Case No. 1:17-cv-36

Barrett, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

        Plaintiff Danielle Marie Young brings this action pursuant to 42 U.S.C. §§ 405(g) and

1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security

("Commissioner") denying her application for supplemental security income ("SSI"). This

matter is before the Court on plaintiff's statement of errors (Doc. 13), the Commissioner's

response in opposition (Doc. 14), and plaintiff's reply memorandum (Doc. 17).

## I. Procedural Background

        Plaintiff filed her application for SSI in March 2013, alleging disability since July 5, 2012

due to a combination of physical and mental impairments.[1]  The application was denied initially

and upon reconsideration.  Plaintiff, through counsel, requested and was afforded a hearing

before administrative law judge ("ALJ") Deanna L. Sokolski on June 24, 2015.  Plaintiff, a

vocational expert ("VE"), and plaintiff's case manager appeared and testified at the ALJ hearing.

On October 29, 2015, ALJ Sokolski issued a decision denying plaintiff's SSI application.

Plaintiff's request for review by the Appeals Council was denied, making the decision of ALJ

Sokolski the final administrative decision of the Commissioner.

---

[1] Plaintiff previously filed an application for SSI and disability insurance benefits ("DIB") on August 25, 2009,
alleging disability since May 31, 2002.  Her applications were denied initially and upon reconsideration.  ALJ
Kristen King issued a written decision on July 5, 2011 denying her applications.  (Tr. 112-124).

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for SSI, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 416.920(a)(4)(i)-(v), 416.920(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform

the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

## B. The Administrative Law Judge's Findings

Plaintiff initially filed applications for SSI and DIB in 2009, alleging disability since May 31, 2002. (Tr. 112-124). In rendering her decision on plaintiff's subsequent SSI application, ALJ Sokolski recognized she was bound under principles of administrative res judicata by ALJ King's prior findings as to plaintiff's residual functional capacity ("RFC") "in the absence of new and material evidence relating to such a finding; a change in the law, regulations, or rulings affecting the finding; or the method for arriving at the finding." (Tr. 19) (citing Acquiescence Ruling (AR) 98-4(6); *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997)). ALJ Sokolski determined that new evidence supported changed circumstances and therefore she did not adopt ALJ King's prior RFC determination.[2] (*Id.*). Specifically, ALJ Sokolski noted that an MRI of the lumbar spine completed on July 14, 2012 showed two small disc protrusions without definite neural effacement. (*Id.*, citing Tr. 338). She also noted that plaintiff had been diagnosed with displacement of the lumbar disc without myelopathy (*Id.*, citing Tr. 368) and that this evidence supported a more restrictive RFC finding.

ALJ Sokolski applied the sequential evaluation process and made the following findings of fact and conclusions of law:

1. The [plaintiff] has not engaged in substantial gainful activity since March 10, 2013, the application date (20 CFR 416.971 *et seq.*).

---

[2] ALJ King found plaintiff had the RFC for light work with the following exceptions: "never climb ladders, ropes, and scaffolds, limited to performing simple routine and repetitive tasks, only occasional contact with the public, but no transactional interaction, such as sales or negotiations, and no more than occasional changes in the work setting." (Tr. 119).

2. The [plaintiff] has the following severe impairments: degenerative disc disease, obesity, sleep apnea, major depressive disorder, bipolar disorder, mood disorder, and personality disorder (20 CFR 416.920(c)).

3. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the [ALJ] finds that the [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the [plaintiff] can never climb ladders, ropes, or scaffolds but she can occasionally climb ramps and stairs, kneel, stoop, crouch, or crawl, and she can frequently balance. The [plaintiff] should avoid all exposure to work place hazards such as unprotected heights and dangerous moving machinery. She can perform simple, routine, repetitive tasks not involving transactional interaction such as sales or negotiations in a work environment free of fast-paced production requirements involving simple work related decisions with few if any workplace changes and occasional interaction with supervisors, coworkers, and the public.

5. The [plaintiff] is unable to perform any past relevant work (20 CFR 416.965).[3]

6. The [plaintiff] was born on February 13, 1982 and was 31 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the

---

[3] Plaintiff has past relevant work as a cashier. (Tr. 32).

national economy that the [plaintiff] can perform (20 CFR 416.969 and 416.969(a)).[4]

10. The [plaintiff] has not been under a disability, as defined in the Social Security Act, since March 10, 2013, the date the application was filed (20 CFR 416.920(g)).

## C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746).

---

[4] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative unskilled occupations such as housekeeping/cleaner (140,000 jobs nationally), router (50,000 jobs nationally), and collator operator (16,000 jobs nationally). (Tr. 33, 105).

*See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

### D. Specific Errors

Plaintiff alleges in her statement of errors that the ALJ committed the following errors: (1) the ALJ erred in discounting the severity of plaintiff's impairments by discussing her periodic and intermittent improvement with treatment and failing to address her subsequent decline in that improvement; (2) the ALJ erred in finding plaintiff's testimony to not be credible; (3) the ALJ erred in failing to properly evaluate plaintiff's RFC; (4) the ALJ erred in failing to consider plaintiff's sleep apnea and its effect on her ability to work; and (5) the ALJ erred in failing to comply with SSR 02-01p in considering the impact of plaintiff's obesity on her ability to work. (Doc. 13). The Court will first address whether the ALJ erred in formulating plaintiff's RFC.

### 1. The ALJ properly determined plaintiff's RFC

Plaintiff argues that the ALJ did not conduct a proper RFC determination. (Doc. 13 at 14-16). Plaintiff argues that the ALJ failed to properly weigh the physical RFC opinions of the state agency medical consultants, who assessed plaintiff as capable of only sedentary work and not light work as the ALJ determined. (*Id.* at 15). Plaintiff also argues that the ALJ failed to consider plaintiff's sleep apnea and obesity and discuss how those conditions affect plaintiff's ability to engage in substantial gainful activity. (*Id.*).[5] Plaintiff further contends that in determining her RFC, the ALJ erred in analyzing the credibility of her own subjective complaints of pain and the testimony of her caseworker, Ms. Bracie Weldon. (*Id.*).[6] Plaintiff

---

[5] The Court will address this argument in conjunction with plaintiff's separate assignments of error challenging the consideration the ALJ gave to plaintiff's sleep apnea and obesity.
[6] The Court will discuss this argument in conjunction with plaintiff's separate assignment of error challenging the ALJ's credibility analysis.

also contends that the ALJ erred in "discounting the severity of the impairments based upon periodic and intermittent improvements with treatment while failing to address portions of the record including evidence of the improvement being temporary and subsequent declines with evidence of a continuing impairment."[7] (Doc. 13 at 6).

The Commissioner responds that the ALJ reasonably weighed the evidence in the record and therefore her RFC determination is supported by substantial evidence. (Doc. 14 at 5). The Commissioner maintains that the ALJ reasonably considered plaintiff's physical impairments and reasonably concluded that despite instances where plaintiff had worsening pain, plaintiff's physical impairments were not disabling. (*Id.*). The Commissioner argues that plaintiff has neither indicated how the ALJ erred in considering these impairments nor addressed what additional limitations she had due to these impairments. (*Id.* at 7-8). The Commissioner contends that plaintiff merely disagrees with the conclusion that the ALJ drew from the medical evidence and has not pointed to any evidence that the ALJ failed to consider. (*Id.* at 8). The Commissioner maintains that the ALJ reasonably gave the opinions of the state agency medical consultants "some weight." (*Id.*). The Commissioner argues that the ALJ reasonably concluded that plaintiff's subsequent diagnosis of lumbar degenerative disc disease did not support a finding that she could only perform sedentary work. (*Id.* at 9). The Commissioner notes that even if the ALJ erred in this regard, such an error is harmless because the VE testified that an individual with the limitations in the ALJ's RFC who was limited to sedentary work could still perform a significant number of jobs in the national economy. (*Id.*).

ALJ Sokolski gave "some weight" to the physical RFC assessments of state agency consultants Drs. Prosperi and Manos, who opined that plaintiff was limited to sedentary work.

---

[7] Plaintiff asserts this argument as a separate assignment of error. As it relates to the ALJ's RFC determination, the Court will consider it in conjunction with this present assignment of error.

(Tr. 30). Both ALJ King and ALJ Sokolski determined that plaintiff has the RFC for a range of light work. However, ALJ Sokolski imposed additional postural limitations to accommodate the restrictions imposed by plaintiff's degenerative disc disease. (*Id.*). The ALJ reasonably concluded that the mere existence of plaintiff's "new impairment of degenerative disc disease of the spine does not support [a] finding that she can only perform sedentary work" as the state agency physicians' opined. (Tr. 31).

The ALJ properly weighed the medical opinions of the state agency consultants. Because a non-examining source has no examining or treating relationship with the claimant, the weight to be afforded to the opinion of a non-examining source depends on the degree to which the source provides supporting explanations for his opinions and the degree to which the opinion considers all of the pertinent evidence in the record, including the opinions of treating and other examining sources. 20 C.F.R. § 416.927(c)(3). Contrary to plaintiff's assertion, the ALJ did not substitute her own judgment for the physicians' conclusions on plaintiff's functional capacity, but complied with her regulatory duty to weigh the opinions of these physicians by conducting a thorough review of the evidence of record. The ALJ cited to relatively mild objective and clinical findings demonstrating that plaintiff's degenerative disc disease did not support a limitation to sedentary work. (Tr. 26-27). For example, an MRI taken on July 14, 2012 revealed two small disc protrusions without definite neural effacement. (Tr. 26, citing Tr. 338). An August 2012 physical examination revealed tenderness to palpation in the bilateral trochanteric region, but plaintiff had full range of motion in the bilateral upper extremities and bilateral lower extremities, and only insignificant flexion weakness with 4/5 strength in the lower left extremity. (Tr. 26, citing Tr. 631). In September 2012, plaintiff exhibited full range of motion in her spine, with increased lordosis in the lumbar and thoracic areas. (*Id.*, citing Tr. 627-28). In January

2013, plaintiff reported 80% pain relief from her epidural injections and her pain medication was decreased. (*Id.*, citing Tr. 621). On April 10, 2013, plaintiff visited urgent care for severe pain in the upper back and lateral neck (Tr. 547-49), but an x-ray conducted that same day revealed normal findings. (Tr. 26, citing Tr. 550).

The ALJ noted that plaintiff's symptoms were "waxing and waning over the next year." (Tr. 27). In September 2014, plaintiff reported her pain to be 4/10 with medication and 10/10 without medication. (Tr. 701). In October 2014, plaintiff reported a significant amount of relief from her injections and pain medication. (Tr. 699). In November 2014, plaintiff reported that her pain had increased over the past month. (Tr. 694). However, the ALJ noted that examinations in 2015 "continued to yield similarly benign neuromuscular findings, which show that her allegation of unremitting impairment related to pain that effectively precludes all work activity simply is not supported by the record." (Tr. 27). The ALJ cited to records from February 4, 2015, which showed plaintiff received 30-40% relief from her injections and no longer had radiating pain in her foot. (Tr. 847). Plaintiff further reported that her medications managed her pain well without adverse side effects. (*Id.*). On examination, plaintiff had a full range of motion in the bilateral upper extremities, bilateral lower extremities, and spine. (Tr. 850). In the lower left extremity, plaintiff had flexion weakness with 4/5 strength. (Tr. 850-51). Plaintiff had increased thoracic and lumbar lordosis and tenderness in the left and right sacroiliac joints. (Tr. 851). In May 2015, plaintiff reported an excellent response to her epidural steroid injections and noticed improved mobility, improved function, and minimal pain at rest as well as activity. (Tr. 808). Plaintiff's physician noted there had been a gradual, but noticeable decrease in her need for breakthrough pain medications, and he noted concerns about plaintiff's weight and suggested possible bariatric surgery. (*Id.*).

Plaintiff has not cited any evidence or legal authority indicating that the ALJ erred by not adopting the opinions of the state agency physicians in full. The ALJ is tasked with making an RFC determination, considering the medical opinions and all of the other evidence of record. 20 C.F.R. § 416.946(c); *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009). Although a physician may render an opinion on a plaintiff's RFC, the ultimate responsibility for determining a claimant's capacity to work lies with the ALJ. *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010) (citing 42 U.S.C. § 423(d)(5)(B); *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 578 (6th Cir. 2009)). *See also* 20 C.F.R. § 416.927 (the responsibility for assessing a claimant's RFC lies with the Commissioner). Here, the ALJ was only required to discuss the opinions of the state agency reviewers and afford them weight insofar as their opinions were supported by the evidence in the case record. *See Helm*, 405 F. App'x at 1002. The ALJ reasonably determined that plaintiff's degenerative disc disease limited her to a range of light work with additional postural limitations, and not to sedentary work as the state agency physicians opined. Plaintiff has not pointed to any opinion evidence or objective findings the ALJ failed to consider which show the ALJ's decision affording only "some" weight to the state agency physicians is without substantial support in the record. Even where substantial evidence would support a different conclusion or where a reviewing court would have decided the matter differently, the ALJ's decision must be affirmed if it is supported by substantial evidence. *See Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999).

Assuming, *arguendo*, that plaintiff's degenerative disc disease restricts her to sedentary work, any error the ALJ committed by not limiting plaintiff to sedentary work is harmless. The VE testified that if plaintiff were limited to never climbing ladders, ropes, and scaffolds, occasionally climbing ramps and stairs, occasionally kneeling, stooping, crouching, and

crawling, and frequently balancing, in addition to the other restrictions in the RFC finding, she

could perform sedentary jobs of general office clerk (10,000 jobs nationally), addresser (10,000

jobs nationally), production work helper (5,000 jobs nationally), inspector (8,000 jobs

nationally), tester (8,000 jobs nationally), sorter (8,000 jobs nationally), machine operator tender

feeder (6,000 jobs nationally), stuffer (4,000 jobs nationally), and ampoule sealer (1,400 jobs

nationally). (Tr. 104-07). The VE testified that plaintiff could still perform a significant number

of jobs in the economy if limited to sedentary work. *See Taskila v. Comm'r. of Soc. Sec.*, 819

F.3d 902, 905 (6th Cir. 2016) (200 jobs in the region and 6,000 jobs nationwide amounted to

"significant numbers" of available jobs) (citing *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574,

579 (6th Cir. 2009) (2,000 jobs in the national economy constituted a significant number)). *See*

*also Nash v. Sec'y of H.H.S.*, 59 F.3d 171 (Table), 1995 WL 363381, at *3 (6th Cir. June 15,

1995) (70,000 jobs in the national economy was a significant number); *Putman v. Astrue*, No.

4:07-cv-63, 2009 WL 838155, at *2-3 (E.D. Tenn. Mar. 30, 2009) (200-250 regional jobs and

75,000 national jobs constituted significant numbers) (citing cases). Thus, because the evidence

establishes that plaintiff could perform a significant number of jobs if restricted to sedentary

work, any error the ALJ committed by formulating an RFC for a range of light work was

harmless.

Finally, plaintiff's argument that the ALJ cherry-picked portions of the record and did not

properly analyze the whole record is without merit. (Doc. 13 at 6). Plaintiff argues the ALJ

erred in discounting the severity of her impairments based on periodic improvements and failed

to address portions of the record demonstrating a subsequent decline in her improvement. (*Id.*).

However, an ALJ "does not 'cherry pick' the evidence merely by resolving some inconsistencies

unfavorably to a [plaintiff]'s position." *Solembrino v. Astrue*, No. 1:10-cv-01017, 2011 WL

2115872, at *8 (N.D. Ohio May 27, 2011). The ALJ considered that even though plaintiff's symptoms were "waxing and waning," no evidence in the record supported a limitation beyond the diminished range of light work activity set forth in the RFC. (Tr. 27). The ALJ noted that physical examinations continued to yield benign results. (*Id.*). Moreover, plaintiff has failed to point to any objective evidence or findings in the record that the ALJ failed to address. (*See* Doc. 13 at 6). Accordingly, plaintiff's assignments of error regarding the ALJ's RFC determination should be overruled.

## 2. The ALJ did not err in her credibility analysis

Plaintiff argues that the ALJ erred in evaluating her credibility. (Doc. 13 at 5-6). Specifically, plaintiff alleges that the ALJ erred in discussing her prior marijuana use as a basis for evaluating her credibility. Plaintiff also argues that her own credibility is further substantiated by the testimony of her caseworker, Ms. Weldon, who worked with plaintiff for seven to eight months prior to the hearing and testified that plaintiff missed many of her appointments due to mood swings, and was impulsive, overwhelmed, and fearful of leaving the house. (*Id.* at 6, 8-9). Plaintiff further alleges that the ALJ failed to comply with Social Security Ruling 96-7p and consider plaintiff's persistent efforts to obtain pain relief in her credibility analysis. (*Id.*). Plaintiff argues that her testimony is supported by the record, including her medical sources, consultative examiners, and the opinions of Ms. Weldon and her mother. (*Id.* at 13).

The Commissioner responds that the record fully supports the ALJ's finding that plaintiff's complaints were not entirely credible and were inconsistent with the objective evidence in the record. (Doc. 14 at 3, 5). The Commissioner argues that the ALJ reasonably cited to plaintiff's marijuana use in her credibility analysis because plaintiff made contradictory,

inconsistent statements about her prior drug use. (*Id.*). The Commissioner contends that the ALJ reasonably considered plaintiff's treatment modalities and credited plaintiff's use of various forms of treatment for her impairments, but "also noted that those treatments were often successful in relieving plaintiff's symptoms." (*Id.* at 3-4). The Commissioner also contends that the ALJ reasonably considered that plaintiff was unwilling to pursue more drastic treatment to treat her impairments, such as surgery, which was discussed by her doctors. (*Id.* at 4).

Title 20 C.F.R. § 416.929 and Social Security Ruling 96-7p, 1996 WL 374186 (July 2, 1996)[8] describe a two-part process for assessing the credibility of an individual's statements about symptoms, including pain. First, the ALJ must determine whether a claimant has a medically determinable physical or mental impairment that can reasonably be expected to produce the symptoms alleged; second, the ALJ must evaluate the intensity, persistence, and functional limitations of those symptoms by considering objective medical evidence and other evidence, including: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) treatment, other than medication, received for relief of pain or other symptoms; (6) any measures used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 416.929(c), SSR 96-7p. "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor

---

[8] Effective March 28, 2016, SSR 96-7p has been superseded by SSR 16-3p, 2016 WL 1119029, which "provides guidance about how [the SSA] evaluate[s] statements regarding the intensity, persistence, and limiting effects of symptoms." *See* 2016 WL 1237954 (clarifying the effective date of SSR 16-3p). There is no indication in the text of SSR 16-3p that the SSA intended to apply SSR 16-3p retroactively, and the Ruling therefore does not apply here. *See Watts v. Comm'r of Soc. Sec.*, No. 1:16-cv-319, 2017 WL 430733, at *10 (S.D. Ohio Jan. 31, 2017) (Report and Recommendation) (Litkovitz, M.J.), *adopted*, 2017 WL 680538 (S.D. Ohio Feb. 21, 2017) (Barrett, J.); *Cameron v. Colvin*, No. 1:15-cv-169, 2016 WL 4094884, at *2 (E.D. Tenn. Aug. 2, 2016).

and credibility." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). "Nevertheless, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Id.*

Upon review of the ALJ's complete credibility determination, the Court finds the ALJ's credibility finding is substantially supported by the evidence of record and is entitled to deference. The ALJ concluded that plaintiff's testimony was not entirely credible. (Tr. 26). In terms of plaintiff's complaints of alleged physical pain, the ALJ concluded that "[t]he objective medical evidence does not generally support the severity of her allegations." (*Id.*). The ALJ noted that "[a]lthough the record reflects the presence of legitimate physical impairments, there is no evidence to support a limitation beyond the diminished range of light work activity set forth [in the RFC]." (Tr. 27). Likewise, with regard to plaintiff's mental impairments, the ALJ concluded that "the objective evidence and treatment history suggest that she is less limited than alleged." (*Id.*).

Here, plaintiff has not shown that the ALJ committed any error in connection with the assessment of her credibility. The Court finds that the ALJ adequately considered plaintiff's subjective statements as to her symptoms and functional limitations (Tr. 24-26), along with her daily activities, the objective medical evidence, and the medical opinions of record. (Tr. 21-24). *See Newman v. Colvin*, No. 1:15-cv-639, 2017 WL 685685, at *7 (S.D. Ohio Feb. 1, 2017) (holding that ALJ properly considered the requisite factors in making his credibility determination because he considered plaintiff's subjective statements, objective medical evidence, plaintiff's activities of daily living, and the record medical opinions), *adopted*, *Newman v. Comm'r of Soc. Sec.*, 2017 WL 680632 (S.D. Ohio Feb. 21, 2017); *Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005) ("[t]he ALJ need not analyze all seven

factors identified in the regulation but should provide enough assessment to assure a reviewing court that he or she considered all relevant evidence."). In addition, contrary to plaintiff's allegation (Doc. 13 at 10), the ALJ considered plaintiff's treatment efforts, but found plaintiff's treatment was essentially routine and conservative in nature and generally successful in controlling her symptoms. (Tr. 30). This was an appropriate factor for the ALJ to consider in assessing plaintiff's credibility and plaintiff has cited to no medical evidence in the record undermining the ALJ's conclusion. *See Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 638-39 (6th Cir. 2016) (claimant's routine and/or conservative treatment for allegedly disabling impairments supported ALJ's credibility finding).

Nevertheless, plaintiff contends that the ALJ erred in assessing her credibility because there is objective evidence to support her limitations. Plaintiff cites to MRI findings revealing two disc protrusions, examinations showing lower extremity weaknesses, and the testimony of her case manager, Ms. Weldon. (Doc. 13 at 7-8). However, as noted above in connection with plaintiff's challenge to the ALJ's RFC finding, the relatively mild objective and clinical findings demonstrated that plaintiff's physical impairments, including her degenerative disc disease, were not as limiting as plaintiff alleged. *See supra* at 8-9. Even if the evidence could support another outcome, the ALJ's decision must stand when, as in this case, it is supported by substantial evidence. *See Her*, 203 F.3d at 389.

In addition, the ALJ reasonably determined that the testimony of Ms. Weldon did not support plaintiff's subjective complaints. The ALJ noted that Ms. Weldon is not considered an acceptable medical source. (Tr. 32). Under the regulations and rulings applicable to plaintiff's

claim, only "acceptable medical sources" as defined under former 20 C.F.R. § 416.913(a)[9] can provide evidence which establishes the existence of a medically determinable impairment, give medical opinions, and be considered treating sources whose medical opinions may be entitled to controlling weight. *See* SSR 06-03p, 2006 WL 2329939, *2.[10] Moreover, the ALJ reasonably determined that Ms. Weldon's opinion as reflected in the record was inconsistent with her testimony. (Tr. 32). Even though there may be some medical evidence supporting plaintiff's testimony, the ALJ's credibility determination is substantially supported and should not be disturbed by this Court. *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).

Plaintiff also appears to argue that in evaluating plaintiff's credibility, the ALJ placed too much emphasis on Ms. Weldon's assessment of a GAF score of 63, indicating mild symptoms, rather than Ms. Weldon's overall testimony, which "more accurately describes the limitations facing this [plaintiff], than a single GAF score of 63." (Doc. 13 at 8-9). Plaintiff also alleges the "ALJ simply glosses over the fact that in March of 2013, the [plaintiff] was assessed and accorded a GAF score of 39" (*Id.* at 9), suggesting the ALJ cherry-picked the GAF scores in the record. (Doc. 13 at 8-10). However, the ALJ gave only "little weight" to *all* of plaintiff's GAF scores, which ranged from 39 to 65, because she found that GAF scores generally are unreliable and do not accurately reflect plaintiff's functional abilities over time. (Tr. 31-32). Plaintiff has not shown the ALJ erred in considering plaintiff's GAF scores in these disability proceedings.

---

[9] Former § 416.913 was in effect until March 27, 2017 and therefore applies to plaintiff's claim filed in 2013. For claims filed on or after March 27, 2017, all medical sources, not just acceptable medical sources, can make evidence that the Social Security Administration categorizes and considers as medical opinions. 82 FR 15263-01, 2017 WL 1105348 (March 27, 2017).

[10] SSR 06-3p has been rescinded in keeping with amendments to the regulations that apply to claims filed on or after March 27, 2017, and the rescission is effective for claims filed on or after that date. 82 FR 15263-01, 2017 WL 1105348 (March 27, 2017). Because plaintiff's claim was filed before the effective date of the rescission, SSR 06-3p applies here.

Finally, plaintiff's argument that the ALJ erred in discussing her prior marijuana use in the credibility analysis is without merit. The ALJ noted that at the hearing, plaintiff testified that she last used marijuana in 2010, but progress notes contradicting plaintiff's testimony showed that she used marijuana at least until June 2012. (Tr. 30). The ALJ concluded that "[a]lthough the [plaintiff]'s use of marijuana is not material to her disability claim, this discrepancy diminishes the persuasiveness of the [plaintiff]'s subjective complaints and alleged functional limitations." (*Id.*). Contrary to plaintiff's argument, the ALJ cited her marijuana use to show the inconsistencies between her testimony and the medical evidence in the record and therefore did not commit any alleged error. *See Rogers*, 486 F.3d at 247-48 ("[c]onsistency of the various pieces of information contained in the record should be scrutinized"). Because the ALJ's credibility determination is supported by substantial evidence, this Court must defer to it. *See Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Accordingly, plaintiff's assignment of error should be overruled.

### 3. The ALJ reasonably considered plaintiff's sleep apnea and obesity when formulating the RFC[11]

Plaintiff argues that the ALJ failed to consider plaintiff's sleep apnea and its effect on her ability to engage in substantial gainful activity. (Doc. 13 at 17). Plaintiff cites to Social Security Ruling 02-01p, which discusses sleep apnea and its effects on people with obesity. (*Id.*). Plaintiff argues that the ALJ failed to consider plaintiff's testimony supporting her chronic fatigue and sleep apnea conditions. (*Id.*). According to plaintiff, she testified about needing to use a CPAP machine to sleep, and she testified that she awoke five times nightly. (*Id.*). She also testified that she naps frequently during the day and does not get out of her pajamas. (*Id.*).

---

[11] Plaintiff asserts separate assignments of error challenging the ALJ's consideration of her sleep apnea and obesity and the impact of these conditions on her ability to work. The Court will consider these assignments of error together as they are sufficiently related.

Plaintiff contends:

> There is clearly an issue as to her ability to focus and concentrate to the extent necessary to complete a normal workday. There is clearly an issue as to her reduced energy levels affecting her ability to sustain herself sufficiently for an entire work day. Yet the effects of sleep apnea complicated by her morbid obesity such as fatigue and incapability of focusing or concentrating, are not considered by the ALJ even though the ALJ found sleep apnea to be a severe impairment.

(*Id.* at 17-18).

Plaintiff also contends that the ALJ failed to comply with SSR 02-01p and consider the impact of plaintiff's obesity on her ability to work. (*Id.* at 18). Plaintiff cites to evidence in the record where physicians described her as obese and she received a diagnosis of obesity. (*Id.*). Plaintiff also cites to the MRI of her spine and argues that the ALJ failed to consider the effects of obesity on her spinal condition. (*Id.* at 19).[12]

The Commissioner responds that the ALJ fairly considered plaintiff's sleep apnea and obesity and considered "Plaintiff's weight, BMI, discussions with her doctors regarding possible bariatric surgery, and Plaintiff's use of a CPAP machine." (Doc. 14 at 7, citing Tr. 25-27). The Commissioner contends that plaintiff has failed to show how the ALJ erred in considering these impairments or show what additional limitations plaintiff had due to these impairments. (*Id.* at 8).

Social Security Ruling 02-01p addresses the evaluation of obesity in the disability process. Social Security Ruling 02-01p, 2000 WL 628049 (Sept. 12, 2002). SSR 02-01p recognizes that obesity may affect an individual's ability to perform the exertional functions of sitting, standing, walking, lifting, carrying, pushing, and pulling, as well as an individual's ability to perform postural functions such as climbing, balancing, stooping, and crouching. SSR 02-

---

[12] Plaintiff also argues that the ALJ failed to consider her obesity in accordance with Social Security Ruling 00-3p. However, that ruling was superseded by Social Security Ruling 02-01p. *See* Social Security Ruling 02-01p, 2000 WL 628049 (Sept. 12, 2002) ("[t]his Ruling supersedes SSR 00-3p").

01p, 2000 WL 628049, at *6. The Ruling assures that the Commissioner will consider a claimant's obesity in performing steps two through five of the sequential analysis. SSR 02-1p, 2000 WL 628049, at *3 (Sept. 12, 2003). SSR 02-01p does not mandate a particular mode of analysis for an obese claimant. *Bledsoe v. Barnhart,* 165 F. App'x 408, 411 (6th Cir. 2006). "It only states that obesity, in combination with other impairments, 'may' increase the severity of the other limitations." *Id.* at 412 (quoting SSR 02-01p). *See also Young v. Comm'r of Soc. Sec.,* No. 3:09-cv-1894, 2011 WL 2182869, at *7 (N.D. Ohio June 6, 2011) ("The Sixth Circuit requires the ALJ to mention obesity either expressly or indirectly where the record includes evidence of obesity's effects on the claimant's impairments.").

In light of the regulations requiring that a claimant "must furnish medical and other evidence that [the Commissioner] can use to reach conclusions about your medical impairment(s) and . . . its effect on your ability to work on a sustained basis," 20 C.F.R. §§ 404.1512, 416.912, a claimant relying on obesity to establish disability should provide evidence that obesity affects his ability to work. *Snyder v. Comm'r of Soc. Sec.,* No. 2:10-cv-00821, 2012 WL 27302, at *8 (S.D. Ohio Jan. 5, 2012) (Report and Recommendation), *adopted*, 2012 WL 871202 (S.D. Ohio Mar. 13, 2012) (citing *Cranfield v. Comm'r, Soc. Sec.,* 79 F. App'x 852, 857-58 (6th Cir. 2003) (finding that even though physician's reports indicated obesity, the ALJ was not obligated to address the claimant's obesity in light of the claimant's failure to provide evidence that her obesity was a significant impairment that affected her ability to work); *May v. Astrue,* No. 4:10-cv-1533, 2011 WL 3490186, at *6 (N.D. Ohio June 1, 2011) (holding that the ALJ had no obligation to address a claimant's obesity when, despite a diagnosis of obesity in the record, the claimant did not carry burden of demonstrating there were any "functional limitations ascribed to the condition[ ]")).

Here, the ALJ found that obesity and sleep apnea were severe impairments. (Tr. 21). The ALJ noted that "[o]besity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment." (Tr. 22). The ALJ noted that she considered plaintiff's obesity in the context of the overall record evidence. (*Id.*). In formulating plaintiff's RFC, the ALJ considered plaintiff's testimony regarding her diagnosis of sleep apnea and her use of a CPAP machine. (Tr. 25). Plaintiff testified that she had not used the CPAP machine in months because she needed new equipment. (Tr. 25). The ALJ noted that plaintiff was 5'7 and weighed 344 pounds. (Tr. 24). Nonetheless, the ALJ concluded that the objective medical evidence did not support plaintiff's testimony or a finding of disability based on plaintiff's sleep apnea and obesity. Other than citing to an MRI of plaintiff's spine and plaintiff's testimony regarding her subjective symptoms (Doc. 13 at 15, 17), plaintiff has not carried her burden of showing how her obesity or sleep apnea impacts her other impairments. Plaintiff has not cited any medical evidence or opinion indicating there are additional restrictions the ALJ should have included in the RFC to accommodate these impairments. Nor has plaintiff identified any specific functional limitations imposed by her obesity. The ALJ was not required to assume in the absence of such evidence that obesity exacerbated plaintiff's impairments and impacted her ability to perform basic work activities. *See* SSR 02-01p, 2000 WL 628049, at *6 (the ALJ "will not make assumptions about the severity or functional effects of obesity combined with other impairments."). For these reasons, the Court finds that the ALJ adequately considered plaintiff's obesity and sleep apnea. Plaintiff's assignments of error in this regard should be overruled.

**III. Conclusion**

In sum, substantial evidence supports the ALJ's RFC determination. Further, the ALJ did

not err in assessing plaintiff's credibility.  Last, the ALJ properly considered plaintiff's obesity and sleep apnea and the effect of those conditions on her ability to work.

**IT IS THEREFORE RECOMMENDED** that the decision of the Commissioner be **AFFIRMED** and this case be closed on the docket of the Court.

Date: _1/29/18_

Karen L. Litkovitz
United States Magistrate Judge

DANIELLE MARIE YOUNG,
    Plaintiff,

Case No. 1:17-cv-36
Barrett, J.
Litkovitz, M.J.

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of

the recommended disposition, a party may serve and file specific written objections to the

proposed findings and recommendations. This period may be extended further by the Court on

timely motion for an extension. Such objections shall specify the portions of the Report objected

to and shall be accompanied by a memorandum of law in support of the objections. If the Report

and Recommendation is based in whole or in part upon matters occurring on the record at an oral

hearing, the objecting party shall promptly arrange for the transcription of the record, or such

portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the

assigned District Judge otherwise directs. A party may respond to another party's objections

**WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in

accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140

(1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).